# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

CLAUD E. STORY,

     Plaintiff,

vs.                                        CASE NO. CV-08-J-1245-NE

WAUSAU BENEFITS, INC., and
INTERNATIONAL PAPER COMPANY,

     Defendant.

## MEMORANDUM OPINION

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully denied him long term disability benefits, in violation of 29 U.S.C. § 1001, *et seq*. The parties have filed cross motions for summary judgment (docs. 20 and 23) and briefs in support of their respective positions (doc. 21 and 23-2). Both sides also filed the complete administrative record (doc. 22 and 23-2 to 23-11).[1] The parties thereafter filed responses to each others' briefs (docs. 29 and 30). The plaintiff also filed a reply to the defendant's response (doc. 31). Upon consideration of the pleadings, memoranda and evidentiary submissions received, the court concludes that the

---

[1] While the Summary Plan Description was filed with the court, neither party filed the full Plan document. *See* attachment 2 to declaration of Melissa Hartfiel.

plaintiff's motion is due to be granted and the defendant's motion is due to be denied, for the reasons set forth herein.

## FACTUAL BACKGROUND

The underlying facts of this case are not in dispute. The plaintiff was employed by International Paper Company ("IP"), through which plaintiff had a long-term disability (LTD) policy.[2] The plaintiff was initially approved for LTD benefits under the "own occupation" clause of this policy. However, after 24 months, the defendant denied plaintiff's claim for LTD benefits under the "any occupation" clause of the policy.[3] *See e.g*, R. IP00020; IP00083-84. Plaintiff asserts that defendant wrongfully denied his claim for long-term disability benefits under the definition of "any occupation" disability as that term is used in the policy.

The plaintiff was hired by defendant IP on March 8, 1971. IP00053. At the time he stopped working, March 19, 2002, he was a crew leader. IP00085, IP00292. He stopped working due to coronary artery disease, which necessitated quadruple bypass surgery. IP00459, IP00472-477. He was approved for disability benefits from

---

[2]The LTD Plan was eliminated by defendant effective June 15, 2002. See IP00387.

[3]The plaintiff does not distinguish between defendants Wausau (now "UMR") and International Paper. As the plaintiff does not dispute that defendant Wausau/UMR can have no liability for payment of benefits, and lacked final authority under the SPD, the court shall grant defendants' motion for summary judgment to the extent applicable to defendant Wausau/UMR. For purposes of this opinion, the court uses the term "defendant" to denote solely defendant International Paper. The parties do not dispute that any action taken by Wausau/UMR was done on behalf of defendant International Paper. *See e.g.*, IP00160.

March 19, 2002, until September 17, 2002, at which time the benefits provided came under the LTD policy at issue here.  IP00415, IP00417, IP00427-428.  Although an initial return to work was set for October 1, 2002, the plaintiff did not return on that date due to set backs in his treatment.  IP00085, IP00420.  Based on a note from his doctor, the plaintiff's  LTD benefits were then continued through October 31, 2002.  IP00409, IP00419.  The plaintiff also applied for Social Security benefits on August 19, 2002.  IP00416.  The plaintiff was approved for Social Security benefits on October 8, 2002, with a finding that his disability began on March 19, 2002.  IP00401.  Although the plaintiff did return to work without restrictions on October 23, 2002, he was out of work again due to medical problems as of January 1, 2003.  IP00086, IP00382.  Further records reflect that the plaintiff was considered totally disabled through December 31, 2002, and then beginning again on January 1, 2003, as he had attempted a return to work but was unable to physically maintain employment.  IP00357, IP00353-356, IP00366.

The plaintiff still had chest pain in November 2002.  IP00485.  His left knee hurt as well, and the record reflects that although the plaintiff needed a knee replacement, he was putting it off for as long as possible.  IP00485. Dr. David Sibley, who treated the plaintiff for coronary artery disease, notified the defendant in January 2003 that the plaintiff could not perform the functions of his job.  IP00460.  A

3

medical note in January 2003 reflects that the plaintiff also suffered from osteoarthritis in his knees, for which permanent disability was noted.  IP00482.  He was noted to still have some chest wall pain and intermittent sleep problems.  IP00482.

In June 2003 Dr. David Francis opined that the plaintiff had been entitled to disability due to problems with his knees since January 1, 2003.  IP00483.  Dr. William Sims' notes state that the plaintiff "is not working now, so maybe his knees will last a lot longer.  He still has a terrible looking left knee with medial collapse....."  IP00463.  Dr. Sibley believed the plaintiff was doing well from a cardiovascular standpoint in December 2003 and June 2004.  IP00467, IP00499.  However, a listing of limitations completed by Dr. Francis in December 2003 reflected that the plaintiff could not sit, stand/walk, or drive for any amount of time in an 8 to 12 hour work day, could not bend, squat, climb, twist, balance, or stoop, and that he was not a candidate for vocational retraining.  IP00315-316.

The plaintiff underwent knee surgery in July 2004.  IP00462, IP00464-466.  A follow-up examination three weeks later reflects that the plaintiff was "doing okay but he cannot tell much difference overall," and that he could not bend or squat.  IP00461.  Total knee arthroplasty was given as an option.  IP00461.

On a form dated September 12, 2004, Dr. Francis opined that the plaintiff could not work at all, could not use his hands for repetitive grasping, manipulation, or pushing and pulling, and could not bend, climb, twist, stoop or reach above his shoulders. IP00286. Dr. Francis noted that the plaintiff was disabled from "any job" and that such disability was permanent. IP000255.

The parties do not dispute that the plaintiff was entitled to and received benefits as detailed above, pursuant to the "own occupation" definition in the LTD policy. However, under the LTD plan, plaintiff's entitlement to benefits based on the "own occupation" definition ended on November 19, 2004. IP00349. After that, the plaintiff could only continue receiving LTD benefits if he was disabled from "any occupation," as that term is defined by the policy.[4]   IP00346, IP00349-350. Therefore, the defendant undertook an "any occupation" review of the plaintiff's claims. IP00318. Based on an independent medical examination ("IME"), the plaintiff was found to be able to perform sedentary work and therefore found not disabled under the "any occupation" clause of the LTD policy. IP00092.

The defendant obtained the IME from Dr. James Gauthier on November 23, 2004. IP00289-299, IP00310. Dr. Gauthier's findings reflect that the plaintiff

---

[4]"Any occupation" is described under the LTD policy as "any occupation for which you are qualified by education, training or experience..." IP00123.

suffered from Glaucoma, cataracts, loss of hearing, sinus problems, chest pain, heart disease, pain with breathing, low back pain, bilateral knee pain, dizziness, and headaches.  IP00291.  According to the plaintiff, he could stand for 20 to 30 minutes, walk for one-quarter mile, and sit for two to three hours.   IP00293.   Upon examination, Dr. Gauthier noted that the plaintiff appeared "deconditioned" but had normal range of motion in his neck, shoulders, elbows, wrists, hands and lumbar spine.  IP00293-294.  He had a brace on his left knee, and x-rays showed moderate degenerative changes of his knees.  IP00294.  In Dr. Gauthier's opinion, the plaintiff suffered from coronary artery disease, bilateral knee arthritis, history of sleep apnea, and history of cervical fusion.  IP00295.  Dr. Gauthier concluded that the plaintiff could perform sedentary work based on limitations from his knees, with no limitations regarding use of his hands or arms.  IP00297.

A vocational evaluation procured by defendant Wausau notes that the plaintiff has "refused the recommended total knee arthroplasty" and that "he has declined the recommended surgery" for sleep apnea.[5]  IP00265-266.  The vocational consultants

_____

[5]Case notes state that "[i]t has been recommended for 2 years that he needs total knee replacement and EE has declined.  The MD has done arthroscopic surgery instead as a way to provide some treatment at this juncture.  EE is to return to ortho is Dec 04."  IP00137.  The administrative record provided to the court does not contain any medical records which reflect the same.  Similarly, case notes state that the plaintiff declined treatment for sleep apnea, but no medical records show that.  *See e.g.*, IP00077.

On a form completed September 13, 2004, the plaintiff stated that his "knees are worn out – need to be replaced – I have sleep apnea – I've tried the machine that blows air into your

who prepared the evaluation gave "primary consideration" to the "permanent restrictions as medically defined by Dr. Gauthier." IP00266.  Although noting that the plaintiff was 58 years old, completed his education more than 30 years previously, and had limited experience applying and interviewing for positions, the consultants concluded that the plaintiff was "probably employable." IP00267.  Based on the vocational evaluation, the defendant concluded that based solely on the plaintiff's physical restrictions, he could obtain employment as a security guard, hotel/motel clerk, telemarketer, and assembly and production worker.[6] IP00283.  The consultants added the caveat that

> ...Mr. Story should be selective with the positions he considers.  As an example, he should be able to fulfill the duties as a night shift worker at a hotel/motel due to the decreased traffic and customer needs compared to a first or second shift at the same establishment.  Also assembly or production positions should involve light items and the ability to utilize a stool or other accommodations for seated task completion.  Many light

---

mouth, it didn't work.  I've had 4 bypasses 3– of the 4 collapsed within 4 months & had to have stints put in." IP00189.  In response to the question, "What are your specific plans for the future?" the plaintiff answered "Wait on dying." IP00190.

    [6]No evidence is before the court as to what skills these positions require or whether plaintiff possesses any such necessary skills, such as the ability to use a computer.  While the plaintiff is described as "mechanically inclined," he has been performing the same job functions for the past thirty plus years. The court finds no basis in the evidence to assume the plaintiff, without vocational training, would be able to perform the basic job functions of some of these positions.

production positions already involve the ability to sit, however, this may be an accommodation that can be discussed with an employer.[7]

IP00267.  Although the plaintiff was noted to be "mechanically inclined and has experience with machine operation as well as knowledge of tool use...." (IP00266), the jobs set forth in the report do not correlate to such "education, training or experience."  Based on the IME and vocational evaluation, defendant Wausau notified the plaintiff on December 28, 2004, that his benefits would terminate January 31, 2005.  IP 00261.

The plaintiff requested reconsideration of this decision on January 6, 2005. IP00164.  He disputes that he is able to perform sedentary work.  Defendant requested a peer review of the decision, specifically addressing four questions concerning the plaintiff's ability to work and Dr. Gauthier's limitations.   IP00109-110.   This analysis, conducted by Dr. Bernice Stein, was based on the medical records and a phone call with plaintiff's treating physician, Dr. Francis.[8]  IP00104.  Dr. Stein opined

---

[7]Unfortunately, the copy provided to the court has a note stating "probably employable" covering the first part of this paragraph as well as the listing of jobs set forth by the vocational consultants.  IP00267.

[8]According to Dr. Stein, Dr. Francis completed the form dated September 12, 2004, detailing the plaintiff's limitations on work related activities based on the plaintiff's specific job at International Paper.  IP00105.  The court notes this is in direct conflict with Dr. Francis checking the box next to "Incapable of Sedentary Work" on that form as well as checking "yes" to the two boxes asking:

| Is patient totally disabled: | Own Job | X Yes | No |
|---|---|---|---|
| | Any Job | X Yes | No. |

IP00255.

that the plaintiff was not disabled either by his knee condition or coronary artery disease. IP00104. Thus, the plaintiff was notified on January 31, 2005, that his benefits would end February 1, 2005. IP00099. The plaintiff again appealed that determination. IP00072, IP00097. On February 25, 2005, defendant International Paper notified the plaintiff that

> Based on the information outlined in this letter, the plan administrator is unable to reverse Wausau Benefits' determination that you do not meet the definition of totally disabled for any occupation as defined by the Plan and that you are not eligible for LTD benefits under the Plan.

IP00071.

The parties do not dispute that defendant International Paper was the Plan Administrator. According to defendants, and undisputed by plaintiff, defendant Wausau was a third party vendor retained by defendant International Paper to assist in claims administration and make initial LTD determinations under the Plan. Declaration of Melissa Hartfield, ¶¶ 9-10. Initial appeals of determinations were also handled by defendant Wausau. *Id.*, ¶ 12. Any second appeal was made to the Plan Administrator, who had authority to make final determinations as to eligibility for benefits. *Id.*, ¶ 13. The plan administrator was the Senior Vice President of Human Resources for defendant International Paper. IP00159, Attachment 2.

The Summary Plan Description ("SPD") sets forth that the plan administrator

has "discretion to interpret and administer the provisions of the Plans and to decide any claims or disputes that may arise under the Plans. The decision of the administrator shall be final and binding on both the company and the members of the plan...." IP00160, Attachment 2.

The sole issue raised in this case is factual, namely whether or not the plaintiff is disabled from performing "any occupation," as defined by the LTD policy.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the

non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for

summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that the plaintiff is not disabled from "any occupation," is correct.  As a fiduciary, the defendant must administer the Plan "for the exclusive purpose of ... providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (D). The defendant must also provide a "full and fair review" of claim denials. *Id.* § 1133(2).  ERISA itself provides no standards for evaluating a plan administrator's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).   The Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether

"reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*White v. Coca-Cola Co.,* 542 F.3d 848, 853-854 (11th Cir.2008).   The sixth step of this analysis, requiring a "heightened review," was altered by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. – , 128 S.Ct.2343, 171L.Ed.2d 299 (2008), where the Court ruled that the existence of a conflict of interest is "a factor" in determining whether there is an abuse of discretion. *Id*., at 2347.  Thus, the Eleventh Circuit altered the guidelines with the instruction that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1360 (11th Cir.2008).   The "burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest."  *Id.*

Applying each of the steps in turn, the court finds as follows:

13

> *(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.*

The court must first evaluate the claims administrator's interpretation of the plan to determine whether it is "wrong." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008). "Wrong," as the Eleventh Circuit uses the term in ERISA cases, means "the conclusion a court reaches when, after reviewing the plan documents and disputed terms de novo, the court disagrees with the claims administrator's plan interpretation." *Id.*

Considering the evidence in the administrative record, the court is driven to the conclusion that the administrator's decision is wrong.  Specifically, the court finds the defendant's justifications for ignoring the opinions of Dr. Francis to be unpersuasive.  Although the court cannot consider the 2008 opinion of Dr. Francis, namely that the plaintiff has been disabled since 2002, for purposes of establishing disability, the court finds that it adds credence to the plaintiff's position that Dr. Francis understood when he completed forms for the plaintiff in 2002, 2003 and 2004 that he was not being asked about whether the plaintiff was disabled in regard to his "own occupation" but rather whether the plaintiff was disabled in regard to "any occupation."  The defendant attempts to refute Dr. Francis' opinion by the statement

14

of Dr. Stein, but the 2008 opinion clears up any misunderstanding on the part of Dr. Stein.

Additionally, the court finds that under the plan in question, the plaintiff is disabled from "any occupation" when he cannot perform any such employment for which he is qualified "by education, training or experience." Plaintiff's sole training and experience in the prior 30 or so years was in the very job that the parties agree the plaintiff can no longer perform. Additionally, the parties agree that the plaintiff's education was more than thirty years prior. Hence, assuming the plaintiff could perform sedentary work, the sole positions left within the sedentary limitations are seated jobs which require no education, training or experience. Such a finding is in direct contradiction of the policy, yet these are the very sort of jobs defendant opined the plaintiff can perform. Specifically, the consultants believed the plaintiff could work as a security guard, hotel/motel clerk, telemarketer, and assembly and production worker. IP00283. However, they then noted that the plaintiff could really only work at a hotel/motel as a clerk if he could be hired as a night shift worker, and that assembly or production positions should involve light items and provide the ability to utilize a stool or other accommodations for seated task completion. IP00267. Nowhere in the Plan does the "any occupation" limitation require the plaintiff to obtain absolutely any job he can, even if such a job would require

accommodations. Such an interpretation makes the language "for which you are qualified by education, training or experience" superfluous. Additionally, although defendant relies on the conclusion of Dr. Gauthier that the plaintiff could perform sedentary work, the jobs suggested by defendant fail to take account of Dr. Gauthier's findings of Glaucoma, cataracts, loss of hearing, sinus problems, chest pain, pain with breathing, low back pain, dizziness, and headaches. IP00291. Rather, defendant focuses its entire argument on solely knee pain and prior cardiovascular surgery.

Further convincing the court that the administrator's decision was simply wrong is the award of Social Security benefits.[9] See IP00373-378. Although solely the award letter is contained in the administrative record, the court finds that the numerous ailments found by Dr. Gauthier, such as a loss of hearing and a loss of vision (from cataracts) seemingly support such a finding.

> *(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.*

The parties do not dispute that the administrator is vested with discretion in reviewing claims. Plaintiff's brief (doc. 23) at 13; defendants' brief (doc. 21) at 14.

---

[9]Under the Social Security Act, disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. §§ 216(I) and 223(d) of the Social Security Act.

> *(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).*

The court must determine whether the decision to deny benefits was reasonable, given the information known to the administrator at the time the decision was made.[10] *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1550 (11th Cir.1994) (stating that in ERISA cases, the court is limited to the evidence before the Administrator at the time the claim for benefits was denied).  The Eleventh Circuit clarified this step by stating that "the plan administrator's decision to deny benefits must be upheld as long as there is a 'reasonable basis' for the decision."  *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir.2007).  Guided by the principle of trust law that a trustee's interpretation should not be disturbed if it is reasonable, a claims administrator's wrong interpretation is arbitrary and capricious only if it is unreasonable.  *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*,

---

[10]The plaintiff makes much ado about the fact that the defendant submitted the Declaration of Melissa Hartfiel, and the defendant seeks to have the court strike the vocational assessment and other evidence contained in the administrative record but submitted for the first time after the administrator made a final decision.  The plaintiff misunderstands the difference between evidence of what went into the decision that was ultimately made and adding additional evidence to dispute that decision.  The court will not consider the 2008 opinion of Patsy Bramlett. IP00005-14.  However, the court does consider the statement of Dr. Francis for the sole purpose of his notation that he considered the plaintiff wholly unable to work since 2002. IP00049.

240 F.3d 982, 992 (11th Cir.2001); citing *Firestone*, 489 U.S. at 110-11. The claimant bears the burden of proving that he is entitled to benefits. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir.1998).

In making this determination, the court should begin with the language of the Plan itself. *Id*.

As noted above, the Plan before this court states:

**How the Plan Works**

To be eligible for LTD benefits, you must be totally disabled for the maximum duration of your Weekly Sickness and Accident benefits.

> **Totally Disabled** – when you are unable to perform the duties of your job for the first 24 months and are under the regular care of a licensed physician and thereafter when you cannot perform any occupation or employment for which you are qualified by education, training or experience and are under the regular care of a licensed physician.

IP00150.  The plan does not define "totally disabled" beyond that statement.  It does state that "[d]eterminations of total disability under the Plan are made by the Plan's claims administrator."  IP00151.  The Plan also states that

> The plan administrator has discretion to interpret and administer the provisions of the Plans and to decide any claims or disputes that may arise under the Plans.  The decision of the plan administrator shall be final and binding on both the company and the members of the Plans. The plan administrator is responsible for ensuring that accurate records

are maintained, that all reports and disclosures are made as required by law and that benefits are paid as authorized.

IP00160.

Thus, to establish entitlement to LTD benefits, the plaintiff must establish that (1) he cannot perform any occupation or employment for which he is qualified by education, training or experience, and (2) that he is under the regular care of a licensed physician, and (3) the plan administrator decides he is disabled.  In the facts before this court, the administrator ignored all of the opinions of the plaintiff's treating physician, who quite clearly believed the plaintiff to be disabled from all employment, in favor of a contracted consultative physician, who posited that plaintiff's physician did not really mean that the plaintiff was disabled from all employment even though he repeatedly stated that.

Although defendant was not bound to give the opinions of the plaintiff's treating physician special deference when it evaluated the merits of the plaintiff's claims for continued benefits, ERISA does require "full and fair" assessment of the plaintiff's claims.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003).  The Supreme Court has explicitly stated that this standard does not require giving a treating physician's opinion more weight than that of other evidence.  *Id.*, 538 U.S. at 825, 123 S.Ct. at 1967 ("We hold

that plan administrators are not obliged to accord special deference to the opinions of treating physicians.  ERISA and the Secretary of Labor's regulations under the Act require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials .... But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition").

The parties do not dispute the plaintiff's diagnoses as much as they dispute the limitations arising from those diagnoses.  According to the plaintiff, he is in disabling pain all the time.  According to plaintiff's physician, the plaintiff's pain and other ailments combine to make him wholly unable to perform any gainful employment. The defendant notes that the plan here contains the following:

> At any time during your period of disability, the company reserves the right to require you to be examined by a physician of its choice for the purpose of verifying your continued disability.  Benefit payments will cease if this physician's exam fails to verify your disability or if you fail to submit to the examination.

IP 00154.  Thus, the defendant asserts it was wholly within its rights under the plan to send the plaintiff to Dr. Gauthier and, based solely on Dr. Gauthier's opinion, cease benefit payments to the plaintiff.[11]  Defendant's response (doc. 30) at 13.

---

[11]The defendant also argues that the Social Security decision awarding the plaintiff those benefits on October 8, 2002, was at a time plaintiff was being treated only for coronary heart disease, which "as of June 6, 2004, had resolved to the point of being asymptomatic, as noted by Plaintiff's cardiologist."  Defendant's response, at 13.  Dr. Sibley noted that the plaintiff was

Defendant argues that because Dr. Francis failed to set out any "objective clinical findings" in support of his opinion, his opinion that the plaintiff is unable to perform sedentary work is wholly without credence.  Defendant's response, at 15. Defendant further asserts that Dr. Stein based her opinion that the plaintiff could perform sedentary work on the lack of objective findings.  Defendant's response, at 15-16.  However, in *Oliver*, the Eleventh Circuit recognized that  "much medical evidence, especially as it relates to pain, is inherently 'subjective' in that it cannot be quantifiably measured.  Indeed, the only evidence of qualifying disability may be ... 'subjective,' such as physical examinations and medical reports by physicians, as well as the patient's own reports of his symptoms." *Oliver*, 497 F.3d at 1196 (citing *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir.2003)).  In *Oliver*, the Court held that, because that defendant's plan did not exclude from coverage disabilities simply because they could not be diagnosed by "objective" laboratory tests, Coca-Cola's decision was arbitrary and capricious. *Id.* at 1196-97.  Similarly, the court has nothing before it which demonstrates the Plan excludes from LTD benefits disability based on pain.

---

"doing well from a CV standpoint.... Patient is asymptomatic."  IP00467.  This is not equivalent to being problem free, as suggested by defendant.  However, he was still noted to have valvular regurgitation in two of the four heart valves.  *Id.*  Additionally, he was noted to be asymptomatic while not working. *Id.*  Interestingly, side effects from valvular regurgitation, such as chest pain, were noted in November 2002, and when asked, Dr. Sibley opined that the plaintiff could not perform any work. See IP00460, IP00482, 00485.

Given that the plan has no requirement of objective evidence, the Eleventh Circuit has instructed that a court should evaluate the reasonableness of the defendant's decision in light of the sufficiency of the plaintiff's subjective evidence, and the administrator's actions.  "Assuming that the claimant has put forth ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of [his] claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what kinds of independent physician evaluations it conducted.  Accordingly, an administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review."   *Creel v. Wachovia Corporation*, 2009 WL 179584 * 7 (11th Cir.2009), citing *Oliver v. Coca-Cola Co.*, 497 F.3d 1181, 1196-97 (11th Cir.2007), vacated in part on other grounds, 506 F.3d 1316 (11th Cir.2007).

While the defendant obtained evidence which refuted the opinion of plaintiff's treating physician, that does not give the administrator grounds to wholly ignore the plaintiff's reliable evidence. *See Oliver*, 497 F.3d at 1199 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)).  Dr. Gauthier's findings reflect that the plaintiff suffered from Glaucoma, cataracts, loss of hearing, sinus problems, chest pain, heart disease, pain with

22

breathing, low back pain, bilateral knee pain, dizziness, and headaches.  IP00291.

According to the plaintiff, he could stand for 20 to 30 minutes, walk for one-quarter

mile, and sit for two to three hours.  IP00293.  Upon examination, Dr. Gauthier noted

that the plaintiff appeared "deconditioned" but had normal range of motion in his

neck, shoulders, elbows, wrists, hands and lumbar spine.  IP00293-294.  He had a

brace on his left knee, and x-rays showed moderate degenerative changes of his

knees.  IP00294.  In Dr. Gauthier's opinion, the plaintiff suffered from coronary

artery disease, bilateral knee arthritis, history of sleep apnea, and history of cervical

fusion.  IP00295.  In response to the question "Would claimant be considered totally

disabled and unable to perform the duties of **ANY** job based on any of the above

listed diagnoses?"  Dr. Gauthier concluded that the plaintiff could perform sedentary

work based on limitations from his knees, with no limitations regarding use of his

hands or arms.  IP00296-00297.   Dr. Gauthier reached this conclusion with the

assistance of no functional capacities assessment at all.

However, the Plan does not require an inability to perform "ANY" job, but

rather an inability to perform a job for which the plaintiff is qualified by reason of his

education, training and experience.  Thus, the defendant is incorrect in its assertion

that it did not need to establish specific jobs that the plaintiff could perform.  *See*

defendant's response, at 17-18.  Had the plan required disability from "ANY" job,

23

then there would have been no reason to qualify the language "any occupation or employment" with the language "for which you are qualified by education, training or experience...." IP00150.

Dr. Gauthier's opinion was then sent to Dr. Stein along with other medical records for a Peer Review. See IP00104. Dr. Stein claims that she spoke with Dr. Francis and he told her that he filled out disability paperwork for plaintiff based solely on the plaintiff's prior job, even though this statement is contradicted by the very form Dr. Francis completed. IP00105. No further mention of Dr. Francis' medical records is made by Dr. Stein. In the form completed by Dr. Francis in September 2004, Dr. Francis clearly checked that box next to the phrase "Incapable of Sedentary Work." IP00165. There is simply no way to reconcile this with Dr. Stein's assertion that Dr. Francis told her he completed this form based on the plaintiff's prior job with defendant. Dr. Francis lists diagnoses of "CAD" and "osteoarthritis (B) knees." *Id.* Dr. Francis further notes that the plaintiff was disabled from his "own job" and from "any job." *Id.* To accept Dr. Stein's assertion regarding Dr. Francis' completion of the forms over what Dr. Francis actually noted on the forms is the very essence of caprice.

Similarly, the defendant asserts that the opinions of "Drs. Gauthier and Stein alone are sufficient support for the Plan Administrator's determination that Plaintiff

24

was not totally disabled.  Defendant's response, at 19.  Dr. Stein asserts that the plaintiff is not totally disabled from "'any' occupation or employment for which he is qualified by education, training or experience...." and that she agreed with limitations set forth by Dr. Gauthier.  IP00104.  Neither of these doctors in any way discuss the plaintiff's education, training or experience.  While they each opine he is capable of sedentary work, this is not what the SPD requires to receive disability.

The defendant's assertion to this court of everything that is not wrong with the plaintiff does not negate the things which are wrong with him.  Surely an individual does not have to establish a complete inability to care for him or herself prior to being found incapable of performing "any occupation or employment for which you are qualified by education, training or experience."

Lastly, the defendant is either wrong, mistaken, or intentionally trying to mislead this court by stating that the plaintiff "misconstrues the purpose of Woest's report and its findings" and that "Woest concluded that Plaintiff was employable and that such jobs probably existed in Plaintiff's geographic area."  Defendant's response, at 19-20.  That report clearly concludes that "Mr. Story is probably employable within the any occupation category based on the medical, educational and vocational histories presented."  IP00267.  Plaintiff correctly noted that the evaluation concluded that the plaintiff was "probably employable."  Plaintiff's brief, at 15.  Defendant's

assertion otherwise is capricious.  The court finds that Woest's conclusion of "probably employable" does not add support to defendant's assertion that the plaintiff is capable of performing sedentary work within the confines of what plaintiff is qualified to do by reason of education, training or experience.

Further convincing the court of the unreasonableness of the defendant's decision was defendant's knowledge, for more than two years prior to its final decision, that the plaintiff was receiving Social Security disability benefits because he has been determined to be disabled.  The defendant argues, correctly, that the Social Security Administration's finding of disability is not binding on an ERISA plan administrator.  Defendant's response, at 12-13, citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-34 (2003).  However, overlooked by the defendant is the vast gulf between recognizing a decision is non-binding, and a refusal to consider that decision at all.  In contrast to the defendant's suggestion that the Social Security decision is entitled to no weight, a district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits.  *See Kirwan v. Marriott Corp*., 10 F.3d 784, 790 (11th Cir.1994); citing *Pierce v. American Waterworks Co., Inc*., 683 F.Supp. 996, 1000 (W.D.Pa.1988) (relying on Social Security Administration's determination of disability, among other things, to hold that administrator's denial of

benefits was arbitrary and capricious); *Ferguson v. Greyhound Retirement & Disability Trust*, 613 F.Supp. 323 (D.C.Pa.1985) (relying on Social Security Administration's determination of disability, among other things, to deny defendant's motion for summary judgment).

Here, the defendant required plaintiff to represent to Social Security that he was disabled, going so far as to make the plaintiff sign various agreements concerning repayment of LTD benefits based on Social Security benefits received. IP00421-425; *see also* IP00401. Under similar circumstances, the Supreme Court noted that

> the court found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work.... This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous).

*Metropolitan Life Ins. Co. v. Glenn,* 128 S.Ct. 2343, 2352 (U.S.2008). The court notes the same considerations are apparent here. As with that case, the administrator here failed to reconcile its decision that the plaintiff could perform sedentary work with the Social Security Administration's finding that the plaintiff could not. See e.g,

*Cross v. Metropolitan Life Ins. Co.*, 292 Fed.Appx. 888, *3 (11th Cir.2008); *McDaniel v. Hartford Life and Acc. Ins. Co.*, 2008 WL 4426087 *11-12 (M.D.Ga.2008).

> (*4*) *If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.*

Because the court finds the defendant's denial of the plaintiff's benefits both wrong and unreasonable, the court is of the opinion that the decision of the administrator must be reversed.

## CONCLUSION

For the reasons stated herein, the court is of the opinion that the decision to terminate the plaintiff's LTD benefits was arbitrary and capricious. Because this case is before the court on cross-motions for summary judgment, and the court is of the opinion that no genuine issues of material fact exist, the court is of the opinion that this matter is wholly disposed of by the cross-motions. The court **GRANTS** plaintiff's motion for summary judgment on the plaintiff's complaint, and **DENIES** defendant International Paper's motion for summary judgment. Because neither party submitted evidence of the value of these benefits, the court **REMANDS** the case to defendant to determine the compensation to which the plaintiff is entitled under the Plan, plus interest.

Because Wausau/UMW was not a proper defendant to this action, the court

**DISMISSES WITH PREJUDICE** plaintiff's claims against Wausau/UMW.  Costs

shall be taxed against defendant.

**DONE** and **ORDERED** this the 5th day of <u>May</u>, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE